J-S54014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| COREY MAXEY, | |
| Appellant | No. 2821 EDA 2014 |

Appeal from the Judgment of Sentence August 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-15146-2013

BEFORE:  BOWES, PANELLA, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 05, 2016**

Corey Maxey appeals from the judgment of sentence of six to twelve months incarceration imposed by the trial court after it found him guilty of one count of terroristic threats with intent to terrorize another.  After careful review, we reverse.

The Commonwealth's evidence presented to the trial court is summarized as follows.  Appellant was an inmate at the Philadelphia Detention Center.  On the morning of September 3, 2013, Correctional Officer David Lucas, observing that Appellant did not return to his cell when directed, twice ordered Appellant to do so.  When Appellant, who was handcuffed to a travel belt, refused to comply, Officer Lucas grabbed the handcuffed Appellant's travel belt and again ordered Appellant to enter his

---

* Former Justice specially assigned to the Superior Court.

cell because it was "time to take it in." N.T., 2/7/12, at 13. Officer Lucas began to remove Appellant's handcuffs.

Appellant then became "combative and hostile," using profanity and speaking aggressively and disrespectfully. N.T., 2/7/12, at 14. The two continued to argue until Appellant, no longer handcuffed,[1] stepped within two or three feet of Officer Lucas with his arms raised at his chest, which Officer Lucas perceived as a threat. Officer Lucas then punched Appellant on the chin, and Appellant responded by punching Officer Lucas twice in the face, knocking him to the ground. A second correctional officer intervened, tackling Appellant to the ground and handcuffing him. Officer Lucas received three stiches as a result of the altercation.

Though Appellant was charged with assault, terroristic threats, and reckless endangerment, the trial court, sitting nonjury, acquitted him of assault and reckless endangerment and convicted him of only terroristic threats. He was thereafter sentenced to six to twelve months incarceration. This timely appeal follows.

Appellant complied with the trial court's directive to provide a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial

---

[1] Appellant urges that "[i]t is unclear whether [he] was still handcuffed" when he raised his arms and stepped towards Officer Lucas. Appellant's brief at 7 n. 5. However, since we view all evidence in a light most favorable to the Commonwealth as the verdict winner, we reject his account.

court provided a Rule 1925(a) opinion. This matter is now ready for our review. Appellant presents one question on appeal: "Was not the evidence insufficient as a matter of law to sustain [A]ppellant's conviction for terroristic threats pursuant to 18 Pa.C.S. § 2706 where [A]ppellant uttered no threatening words whatsoever?" Appellant's brief at 3.

Our standard of review in assessing a sufficiency claim is well settled. We are limited to evaluating "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014). This Court will not re-weigh evidence, but we will evaluate the whole record and consider all evidence actually received, recognizing that the factfinder evaluates the credibility of witnesses and may believe all, part, or none of the evidence. *Id*. While we cannot substitute the trial court's findings of fact with our own, where a sufficiency challenge involves a legal conclusion drawn from the facts found by the trial court, we will review the decision of that court for an error of law. *In re Ullman*, 995 A.2d 1207, 1213 (Pa.Super. 2010) (citation omitted). Thus, "[a]s with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *Id*.

Appellant argues that the record does not indicate that Appellant "ever uttered one threatening word," but only that he was combative, hostile, and

disrespectful. Appellant's brief at 6. Accordingly, he contends that the record contains insufficient evidence to sustain Appellant's conviction, as the crime of terroristic threats requires a verbal communication.

The Commonwealth maintains that Appellant's proposal is improperly narrow, arguing instead that nonverbal conduct satisfies the communicative element of the crime.[2] It continues that Appellant's threatening gesture, raising his arms and stepping toward Officer Lucas, when coupled with his general verbal aggression and hostility, represented communication sufficient to support his conviction. We do not agree.

Appellant was convicted of 18 Pa.C.S. § 2706(a)(1), which states: "A person commits the crime of terroristic threats if the person communicates,

_____

[2] We reject the Commonwealth's argument that Appellant waived his sole issue because he "failed to present it with sufficient specificity in his Rule 1925(b) statement." Commonwealth's brief at 5. In support of that contention, the Commonwealth cites to **Commonwealth v. Gibbs**, 981 A.2d 274 (Pa.Super. 2009), and **Commonwealth v. Williams**, 959 A.2d 1252 (Pa.Super. 2008). However, unlike the appellants in those cases, Appellant herein was convicted of only one crime, which has two elements. Appellant's averment that there was "insufficient evidence in the record to support a finding of terroristic threats beyond a reasonable doubt," which may in other instances be inadequate, is of sufficient particularity to permit our review of his issue. Pa.R.A.P. 1925(b) statement, 10/27/14, at 1. **See Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (holding that the appellant was entitled to review of issues, though vaguely articulated in his Pa.R.A.P. 1925(b) statement, because the trial court "readily apprehended [his] claim and addressed it in substantial detail").

either directly or indirectly, a threat to. . . commit any crime of violence with intent to terrorize another[.]"

At specific issue in this matter is whether the word "communicates" as used in subsection (a) includes nonverbal communication. The statute defines "communicates" as "conveys in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex and similar transmissions." 18 Pa.C.S. § 2706(e).

The facts, as credited by the trial court, indicate that Appellant cursed at and became combative with Officer Lucas. They further indicate that Appellant stepped within two or three feet of Officer Lucas with his hands raised to his chest area. What they do not indicate, however, is that any threat was uttered by Appellant to Officer Lucas to commit a crime. After review of the entire record and, even viewing all evidence in a light most favorable to the Commonwealth, we cannot find that the Commonwealth presented evidence sufficient to sustain the trial court's finding of guilt with respect to Appellant's terroristic threat charge.

Notably, neither the trial court in its 1925(a) opinion nor the Commonwealth in its brief were able to point to any binding case to support the contention that body language alone can constitute "communication" for the purposes of a terroristic threat conviction. Instead, they both rely on this Court's guidance in *Commonwealth v. White*, 335 A.2d 436 (Pa.Super 1975). Though the *White* Court looked to the "totality of the appellant's

conduct" to establish a guilty finding, it still involved the situation where the defendant verbally threatened to grab the victim prior to any physical action. *Id*. at 440. In fact, the defendants in each case cited by the Commonwealth actually spoke identifiable threats to their respective victims before or while utilizing nonverbal conduct. *See Commonwealth v. Sinnott*, 976 A.2d 1184, 1186 (Pa.Super. 2009), *affirmed in part, reversed in part on other grounds*, 30 A.3d 1105 (Pa. 2011) (appellant told victim that he would kill her father while shouting obscenities and racial slurs before charging at the victim while wielding a hammer); *In re Maloney*, 636 A.2d 671, 672 (Pa.Super. 1994) (actor told victim to "get the f- out of here" while pointing a gun at him);[3] *Commonwealth v. Hudgens*, 582 A.2d 1352, 1355 (Pa.Super. 1990) (defendant, drawing a sword that had been concealed in his trousers, told victim that he was "going to get him").

In *Commonwealth v. Sullivan*, 409 A.2d 888, 889 (Pa.Super. 1979), this Court agreed with outside jurisdictions that a "threat must be uttered with the purpose of terrorizing another, and that 'terrorize' means to cause extreme fear by use of violence or threats." *Id*. Herein, Appellant did not

---

[3] Though the *Maloney* Court called for a comparison between the facts before it and the trial court in *Commonwealth v. Wintz*, 1 D. & C. 4th 299 (Bucks Co. 1988) (holding that, though he uttered no words, a defendant communicated a terroristic threat when he pointed a shotgun at occupants of a passing vehicle), we again note that the *Maloney* defendant uttered a verbal threat to a victim.

use violence to terrorize Officer Lucas, and the record contains no evidence that he uttered any threat.

The **Sullivan** Court also looked to the Official Comment to the then-effective provision of the Model Penal Code upon which Pennsylvania based its statute. Today's statute is likewise derived from the Model Penal Code § 211.3, which is silent regarding nonverbal conduct. The commentary to that provision, however, instructs us regarding the purpose of the terroristic threat statute: "In drafting legislation penalizing threats, we would not wish to authorize grave sanctions against the kind of **verbal threat** which expresses transitory anger rather than settled purpose to carry out the threat or to terrorize the other person." Model Penal Code, § 211.3, Tent. Draft No. 11 at 9 (1960) (emphasis added). **See Commonwealth v. Ferrer**, 423 A.2d 423 (Pa.Super. 1980); **Commonwealth v. Ashford**, 407 A.2d 1328 (1979). In the comment to our own terroristic threat statute, we learn that the provision was intended to cover "oral threats as well as written threats." Tellingly, that same descriptive comment contains no reference to nonverbal conduct.

The oft-recited rule of statutory construction, *expressio unius est exclusion alterius*, is instructive herein. Since the General Assembly chose not to include nonverbal communication in our terroristic threats statute and that neither explanatory comment specifies the statute's applicability to the same, we find that the omission of language addressing solely nonverbal

conduct should be understood as an exclusion and decline to impose it here. *See Commonwealth v. Dixon*, 53 A.3d 839 (Pa.Super. 2012).

Having been unable to find any authority that suggests that solely nonverbal conduct, especially consisting only of raising ones hands to his chest, constitutes a threat for the purposes of the terroristic threat statute and in light of the Commonwealth's inability to present evidence that Appellant uttered any words to suggest that he intended to terrorize Officer Lucas, we conclude that there was insufficient evidence to find that Appellant committed the crime of terroristic threats. Accordingly, we reverse.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.

Judge Panella concurs in the result.

Justice Fitzgerald files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2016