**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL LEE ODOM | : | |
| | : | |
| Appellant | : | No. 1269 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 29, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000338-2017

BEFORE:   STABILE, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 12, 2019**

Appellant, Michael Lee Odom, appeals from the Judgment of Sentence entered in the Adams County Court of Common Pleas on June 29, 2018, following his jury conviction of one count each of Fleeing or Attempting to Elude Police Officers, Terroristic Threats, Harassment, and Driving Under the Influence of Alcohol,[1, 2]  After careful review, we affirm.

On March 7, 2017, Gettysburg police officers arrested Appellant and charged him with the above crimes arising from an incident that took place on around 2:00 AM that morning.  The trial court, citing to the Notes of Testimony from Appellant's April 12, 2018 trial, summarized the facts as follows:

---

[1] 75 Pa.C.S. § 3733(a); 18 Pa.C.S § 2706(a)(1); 18 Pa.C.S. § 2709(a)(4); and 75 Pa.C.S. § 3802(a)(1), respectively.

[2] The court also convicted Appellant of related summary offenses.

---

\*   Former Justice specially assigned to the Superior Court.

On March 27, 2017, at approximately 2:00 [AM], Officer Shannon Hilliard and Officer Kevin McDonald of the Gettysburg Borough Police Department were travelling westbound on York Street about a block from Lincoln Square in Gettysburg Borough when they observed a white sedan travelling through Lincoln Square at a high rate of speed.  Both officers made a determination that the vehicle was speeding.  Officer McDonald activated emergency lights and increased his speed in an attempt to catch up to the white sedan, which appeared to increase its speed when the Officers pulled up behind it.  The Officers followed the white sedan north on Carlisle Street to the intersection with Railroad Street, which has railroad tracks intersecting Carlisle St[reet].

The Officers observed the white sedan, due to its speed, go airborne as it drove over the railroad tracks.  Officer McDonald initiated emergency sirens.

The white sedan continued north on Carlisle Street to the intersection with Water Street where Officers observed the vehicle travel through the steady red traffic signal without applying brakes.  Officer Hilliard testified the white sedan's speed was around 40-45 mph at this point.

After crossing Water Street, the white sedan swerved over the double yellow line into the oncoming traffic lane, returned to its lane of travel, overcorrected and crossed into the parking lane. The white sedan stopped several car lengths before the intersection of Carlisle Street and Lincoln Avenue.

Officer Hilliard approached the passenger's side of the white sedan, where he observed Appellant in the driver's seat. Appellant's vehicle accelerated to the intersection of Carlisle Street and Lincoln Avenue and made a right turn onto Lincoln Avenue.  Officer Hilliard returned to the patrol vehicle and the Officers resumed pursuit onto Lincoln Avenue, where they lost sight of Appellant's vehicle.  Officers located Appellant's vehicle in the parking lot of Smyser Hall shortly after turning east onto Lincoln Avenue and took Appellant into custody.

Both Officers observed Appellant's clothes were soiled, he had bloodshot and glassy eyes, agape mouth, and a strong odor of an alcoholic beverage about his person.  Appellant was taken to Gettysburg Hospital for a blood draw.  Appellant loudly and repeatedly refused a blood draw, both during the drive to the hospital and at the hospital.  The Officers transported Appellant back to the Gettysburg Police Department.

While at the Police Department, Appellant made numerous threats to Officer Hilliard and Officer McDonald. Appellant also admitted to drinking and driving. Officer Hilliard and Officer McDonald both testified that Appellant was under the influence of alcohol to a degree which rendered him incapable of safe driving.

Trial Ct. Op., 9/7/18, at 1-3 (citations omitted; paragraph breaks inserted).

On April 12, 2017, the jury convicted Appellant of the above charges. Following its consideration of a Pre-Sentence Investigation Report and the parties' arguments, on June 29, 2018, the trial court sentenced Appellant to two consecutive terms of 15 to 30 months' incarceration for his Fleeing or Attempting to Elude Police Officers and Terroristic Threats convictions.[3] Appellant did not file a timely Post-Sentence Motion.

On July 26, 2018, Appellant file a *pro se* Notice of Appeal. On August 8, 2018,the court appointed Thomas R. Nell to represent Appellant.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following five issues on appeal, which we have reordered for ease of disposition:

1. Did the trial [c]ourt err in denying [Appellant's] request for jury instructions regarding transitory anger being a defense in the count of terroristic threats?

2. Whether the evidence was sufficient as a matter of law to establish guilt[] beyond a reasonable doubt to the charge of fleeing and eluding?

3. Whether the evidence was sufficient as a matter of law to establish guilt[] beyond a reasonable doubt to the charge of terroristic threats?

---

[3] Appellant's Driving Under the Influence and Harassment convictions merged for sentencing purposes.

4. Did the trial court err when it found [Appellant] guilty, when the verdict was against the weight of the evidence in regard to the count of fleeing and eluding?

5. Did the trial court err when it found [Appellant] guilty, when the verdict was against the weight of the evidence in regard to the count of terroristic threats?

Appellant's Brief at 7.

In his first issue, Appellant asserts that the trial court erred in denying his request for a jury instruction "regarding transitory anger being a defense in the count of terroristic threats." Appellant's Brief at 12-13. However, Appellant does not identify the place in the record where he made this request. Further, he fails to specify the language of the instruction he requested and what instruction, if any, the court gave in response to his request. Appellant utterly fails to support his contention with reference to the relevant places in the record where he preserved this issue, as required by Pa.R.A.P. 2119(c) (stating if reference is made to any matter appearing in the record, argument must set forth place in the record where the matter appears). Accordingly, Appellant has waived this issue. ***Commonwealth v. Williams***, 980 A.2d 667, 671 (Pa. Super. 2009) (stating defendant waived argument on appeal where he failed to indicate in his brief where the issue was preserved in trial court).

In his second issue, Appellant challenges the sufficiency of the Commonwealth's evidence in support of his Fleeing or Attempting to Elude Police Officers conviction. Appellant's Brief at 14-15. Appellant does not, however, explain in his Brief to this Court how the Commonwealth's evidence

was deficient, or cite the statutory language of the offense or any case law in support of his claim.

Rule of Appellate Procedure 2119(a) requires a properly developed argument for each question presented. This requires, among other things, a discussion of and citation to authorities in the appellate brief and the principles for which Appellant has cited them. *See* Pa.R.A.P. 2119(a), (b). Failure to conform to the Rules of Appellate Procedure results in waiver of the underlying issue. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*); *see also Commonwealth v. Clayton*, 816 A.2d 217, 221 (Pa. 2002) ("[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal."). In light of Appellant's failure to develop this claim in conformance with our Rules of Appellate Procedure, we conclude it is waived.

In his third issue, Appellant claims that the Commonwealth's evidence was insufficient to sustain his conviction of Terroristic Threats, 18 Pa.C.S. § 2706(a)(1). In particular, he argues that he lacked the requisite "intent to terrorize" the police officers because his statements were "merely the product of an agitated and angry state of mind." Appellant's Brief at 21. In support of this claim, Appellant avers that the record evidence demonstrated that "his conduct expressed transitory anger rather than a settled purpose to carry out" the threatened actions. *Id.* at 18-19.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review

claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

The crime of making a terroristic threat is defined by statute as follows: "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another. . . ." 18 Pa.C.S. § 2706(a)(1).

For a defendant to be convicted of Terroristic Threats,

> "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 454 Pa. Super. 1, 684 A.2d 597, 600 (1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, [2002 PA Super 108], 797 A.2d 260, 262 (Pa. Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Tizer*, 684 A.2d at 600.

***Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa. Super. 2016) (citing ***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003)).

The Official Comment to Section 2706 explains: "The purpose of th[is] section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S. § 2706, Comment. Thus, the real issue is whether, based on the totality of the circumstances, the "Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether [Appellant] made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." ***Commonwealth v. Walker***, 836 A.2d 999, 1001 (Pa. Super. 2003). ***See Reynolds***, ***supra*** at 730 (examining the totality of the circumstances).

Here, Appellant maintains his statement was the result of "transitory anger" and therefore is not subject to criminal liability. In addition, Appellant favorably compares his case to ***Commonwealth v. Kidd***, 442 A.2d 826 (Pa. Super. 1982), and ***Commonwealth v. Sullivan***, 409 A.2d 888 (Pa. Super. 1979).

***Kidd*** involved a defendant arrested for public drunkenness. As he was being treated in the emergency room, and with his hands handcuffed behind his back, the defendant shouted obscenities and yelled that he was going to kill the police, specifically saying he would machine gun them if given a chance. 442 A.2d at 827. On appeal, this Court held there was "insufficient

evidence that appellant, by his acts, intended to place the officers in a state of fear that agitates body and mind." ***Id.  See also Commonwealth v. Walker***, ***supra*** at 1002 ("The defendant's statements in ***Kidd*** exemplify the sort of hyperbole from which the jury cannot properly infer, beyond a reasonable doubt, either an intent to terrorize or reckless disregard of the risk of causing terror.").

In ***Sullivan***, the defendant telephoned the State Police Barracks, asking a trooper be sent to investigate his claim that the Sheriff of the County had assaulted the defendant's father.  Frustrated by the delay in the response, the defendant telephoned the barracks again and said, "If you don't want to send anybody down here, I have a .30-30 rifle and I'll come up there and blow that son of a bitch's head off."  409 A.2d at 888-89.  The next morning the defendant encountered the Sheriff on the street by chance and during a loud verbal confrontation the defendant again threatened to kill the Sheriff.  ***Id.*** at 889.  The defendant was convicted of two counts of Terroristic Threats.  On appeal, this Court reversed, finding that the defendant's threats were the product of his angry and agitated emotional state of mind, and that the record contained "no evidence that appellant, by his acts, intended to put the Sheriff into a state of 'extreme fear or fear that agitates body and mind[,]' …, and thus did not possess the 'intent to terrorize' required for conviction under section 2706." ***Id.*** at 889-90 (citation omitted).

Here, the trial court concluded that the testimony of the officers regarding the threats made by Appellant, and the surrounding circumstances,

were sufficient to support the jury's guilty verdict. The court explained as follows:

> Officer McDonald and Officer Hilliard both testified that while Appellant was in custody at the Gettysburg Borough Police Department, Appellant made numerous threats on their lives. Officer McDonald testified, "He (referring to Appellant) said he will fucking kill us. I can't remember verbatim what he said, but he said he knows where—he'll bail out of jail, no problem, he has money to do that, he'll find us and where we live." Officer McDonald further testified that these threats were repeated numerous times over the course of an hour. Officer Hilliard testified that Appellant told him "I'm going to fucking kill you" numerous times. Officer Hilliard also testified that Appellant said that when he (Appellant) bailed out of jail, he was going to find us where we live and he wasn't going to fight the charges, but he was coming to fight us. These threats were repeated at least a dozen times over an hour.

Trial Ct. Op. at 7-8 (citation to the Notes of Testimony omitted).

In sum, the court found that, given the numerosity and length of time over which Appellant made his threats, they did not constitute a mere "random spur of the moment emotional outburst resulting from anger," but rather were the kind of threats the Legislature intended to criminalize. *See In re B.R.*, 732 A.2d 633, 638 (Pa. Super. 1999) (citing 18 Pa.C.S. § 2706 Comment and explaining that Section 2706 is not intended to criminalize statements which are "spur of the moment threats which result from anger").

Following our review, we agree with the trial court that the Commonwealth presented sufficient evidence from which the jury could reasonably find that the Commonwealth had proven the requisite elements of the Terroristic Threats charge. The evidence elicited at trial, when viewed in

the light most favorable to the Commonwealth as verdict-winner, indicates that Appellant's repeated threats, unlike the isolated statements made by the defendants in *Kidd* and *Sullivan*, were not spur of the moment. Rather, Appellant's threats were part of a series of at least a dozen threatening statements directed towards the police officers over a period of an hour. In light of the testimony that Appellant made multiple threats over a period of an hour, it was reasonable for the jury to conclude that Appellant evinced an intent to terrorize the officers. Appellant is, therefore, not entitled to relief on this issue.

In Appellant's fourth and fifth issues, he challenges the weight of the evidence. Before we address the merits of Appellant's claims, we consider whether Appellant has preserved them.

Pursuant to the Pennsylvania Rules of Criminal Procedure, a weight of the evidence claim must be "raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607.

Our review of the record indicates that Appellant failed to raise his challenges to the weight of the evidence either orally or in writing at or before sentencing, or in a Post-Sentence Motion. Thus, we find these issues waived.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/12/2019