655 A.2d 566

COMMONWEALTH of Pennsylvania, Appellee,

v.

Oscar Lee BAILEY, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 23, 1995.

Filed Feb. 28, 1995.

Albert J. Flora, Jr., Wilkes–Barre, for appellant.

Peter P. Olszewski, Jr., Dist. Atty., Wilkes–Barre, for Com., appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed on Appellant following a jury trial in which he was convicted of terroristic threats.[1] Appellant was sentenced to imprisonment for twelve (12) to twenty-four (24) months. This appeal followed the denial of his post-verdict motions. We affirm.

The facts surrounding this conviction involved statements made to jurors by Appellant immediately following a trial which concluded on May 5, 1993, on an unrelated criminal matter.[2] Immediately after the trial, Appellant entered a jury waiting room, went over to a telephone, and attempted to make a call. After hanging up the phone, he proceeded through the jury room and, as he passed several jurors seated there, stated to them, "... 'in a month from now ...'" N.T., 11/18/93, p. 25. He did not complete the sentence and proceeded out of the room. Two jurors, who had previously sat on a jury which convicted Appellant of a prior charge, overheard this statement and testified that Appellant looked directly at them when he made it.

After exiting the jury room, Appellant proceeded outside the courthouse and, while on the steps, stated: "... 'in a

1. 18 Pa.C.S. § 2706.

2. Appellant was convicted at that trial of disrupting a meeting, disorderly conduct, and insulting our flag. Appellant was sentenced to a one-year term of probation as a result of these convictions. Appellant's probation was revoked as a result of the incident involved in the matter now before us and was the subject of a prior appeal. *See Commonwealth v. Bailey*, 440 Pa.Super. 628, 654 A.2d 597 (1994) (No. 2298 Philadelphia, 1993, filed 10/26/94).

month a lot of people are going to die because of your decision.'" N.T., 11/18/93, p. 64. He looked directly at a group of other jurors who also sat on his jury earlier. Three jurors from his trial testified to the incident which occurred outside of the courthouse. Also, Leonard Krispin, Jr. testified to having passed Appellant on the steps at that time. Mr. Krispin testified that Appellant stopped next to him on the stairs and made the statement involved herein. Krispin had known Appellant from an employment situation they had in common. Krispin testified that the statement was not made to him, and that he did not speak to Appellant at that time. Appellant had, however, paused on the steps and Krispin thought perhaps Appellant would stop to say hello because they knew each other. Appellant, however, did not speak to him.

The jurors who testified to the statement made inside the courthouse each expressed fear as a result of the tone of voice used by Appellant in the incomplete statement made to them. Likewise, the jurors outside the courthouse expressed their shock and disbelief of what was said, and immediately re-entered the courthouse to report the incident. As a result, a police detective was called to the scene and interviews were conducted. Detective Yursha filed the charge involved here as a result of those interviews.

Appellant raises the following issue in his appeal:

Whether the evidence is sufficient to sustain a conviction of terroristic threats?

Appellant's Brief at p. 2.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, which has won the verdict. We then determine whether the evidence was sufficient to permit the finder of fact to determine that each and every element of the crime charged was established beyond a reasonable doubt. It is the function of the fact-finder to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The fact-finder is free

to believe all, part or none of the evidence introduced at trial. The facts and circumstances established at trial "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [trier of fact] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943). *Commonwealth v. Campbell,* 425 Pa.Super. 514, 519, 625 A.2d 1215, 1217 (1993) (citations omitted).

The crime of terroristic threats is defined in the Crimes Code as follows:

A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706. "The purpose of [Section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." *Campbell,* 625 A.2d at 1218 (*quoting* 18 Pa.C.S. § 2706, Official Comment—1972). We further stated, quoting from *Commonwealth v. Speller,* 311 Pa.Super. 569, 573, 458 A.2d 198, 200 (1983), that "[t]he offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security." *Campbell,* 625 A.2d at 1219. We further stated in *Campbell:*

It has been observed that "'even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce.'" *Commonwealth v. Ashford,* 268 Pa.Super. 225, 229, 407 A.2d 1328, 1329 (1979), quoting Model Penal Code,

§ 211.3, Tent.Draft No. 11 at p. 9 (1960). See also: *Commonwealth v. Chance*, 312 Pa.Super. 435, 443, 458 A.2d 1371, 1375 (1983). Moreover, "it is unnecessary for [the defendant] to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Hudgens*, 400 Pa.Super. 79, 90, 582 A.2d 1352, 1358 (1990).

*Id.* 425 Pa.Super. 514, 625 A.2d at 1219.

As we previously stated, the testimony at trial demonstrated that Appellant first made an incomplete statement to jurors in the jurors' lounge. He testified that when he recognized that there were jurors from his trial present in the room, he refrained from completing the statement because he knew he should not speak "like that", N.T., 11/18/93, p. 83, to jurors who had just sat on his jury. Appellant, however, proceeded to exit the courthouse and make the complete statement he attempted to make inside while looking directly at other jurors who had sat on his jury. One juror who heard Appellant's statement outside the courthouse expressed her fear as follows: "Twenty years ago you might not have been [frightened], but this day and age it is frightening." N.T., 11/18/93, p. 65. Clearly, the circumstances and the manner in which the statement was delivered were such that a jury could infer that Appellant intended to terrorize them. Appellant's own testimony demonstrates that these statements were not made in spur-of-the-moment anger. He thought he had been wronged by the jury's decision in his previous matter and was making, what he called, a religious statement. Appellant testified that his statement was, "... 'one day vengeance is going to come. When vengeance comes, many people will die because of the decision you made.'" N.T., 11/18/93, p. 81. On rebuttal, Leonard Krispin was recalled and he testified that he did not hear Appellant use the word "vengeance" in his statement. Taking the evidence in the light most favorable to the Commonwealth, we find that Appellant's use of the words "in a month" and "your decision," which were part of the state-

ments directed to the jurors, were sufficient under the circumstances to allow the jury in the present case to find that Appellant intended to terrorize these people. Furthermore, the implication of Appellant's statement was that he was threatening a homicide, which is clearly a crime of violence. The evidence was sufficient to convict Appellant of terroristic threats.

Judgment of sentence affirmed.